## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

MAT S. BAYSA,

 Plaintiff,

v.          CASE NO. 8:17-cv-434-WFJ-SPF

CHARLES REDINGER,

 Defendant.

_____/


## MEMORANDUM ORDER OF DISMISSAL AND FINAL JUDGMENT

 The Court files this memorandum order and final judgment outlining the grounds for dismissal of Mr. Baysa's complaint based on his failure to prosecute and his violation of the Court's orders.  The matter is fairly complicated factually and requires the relevant case history outlined below.

### BACKGROUND

*SUMMARY JUDGMENT AND FIRST APPEAL*:

 Mr. Baysa was represented by counsel at the time he filed a multi-count complaint against Deputies Charles Redinger and Stephanie Archer of the Pinellas County Sheriff's Office.  Docs. 1, 23.  He also sued the Pinellas Sheriff in his

1

official capacity in a *Monell* claim.[1]  In addition to state law claims not relevant here, Plaintiff brought federal claims under 42 U.S.C. § 1983 for false arrest, excessive force during lawful arrest, and excessive force during unlawful arrest. The last claim was subsumed by the false arrest claim, per *Jackson v. Sauls,* 206 F. 3d 1156, 1171 (11th Cir. 2000).

The facts arose concerning a late-night dispute at the Derby Lane poker room in Saint Petersburg, Florida.  Detailed facts of the incident are set out in this Court's order found at docket 70.  Mr. Baysa was arrested there, and faced state criminal charges arising from the incident, which he took to trial and received acquittals from the jury.  These civil rights claims then resulted.

After extensive discovery, the parties filed cross motions for summary judgment.  Docs. 42–50.  The parties filed considerable record evidence and depositions in favor of their cross motions.  *Id.*  The Court granted the defense motions on all counts and specifically found on the false arrest claim that there was probable cause to arrest Mr. Baysa for trespass.  Doc. 70 at 15.  Mr. Baysa's lawyer appealed.  Doc. 81.

The Eleventh Circuit affirmed in part and reversed in part.  Doc. 88; *Baysa v. Gualtieri,* 786 F. App'x 941 (11th Cir. 2019).  The appellate court first turned to the false arrest claim and analyzed the record and the applicable law.  786 F. App'x

---

[1] *Monell v. Dep't of Soc. Servs. of City of New York,* 436 U.S. 658 (1978).

2

at 944–45.  In its discussion and review, the Court of Appeals held that probable cause to arrest Mr. Baysa did exist.  *Id*.  The Eleventh Circuit thus affirmed on the merits the summary judgment ruling in favor of the deputies on the false arrest claim.  *Id*.

On the claim of excessive force during the arrest, the Court of Appeals reversed and remanded for reconsideration.  *Id*. at 945–47.  The Eleventh Circuit instructed the undersigned to reconsider the record in a light not dependent or overly reliant upon Mr. Baysa's criminal trial court testimony.  *Id*.  Remanded for consideration were 1) the excessive force arrest claim against the deputies and 2) the related *Monell* claim against the Sheriff.  *Id.* at 947–48.  The state law claims were affirmed as they were not preserved for review.  *Id.* at 943 n.1.

*UPON REMAND AND THE SECOND APPEAL:*

Upon remand the undersigned set the case for trial on the remaining claims: the excessive force arrest claim and the *Monell* claim against the Sheriff in his official capacity.  Doc. 94.  The defense moved for summary judgment, Doc. 95, which was opposed with full briefing by Mr. Baysa's counsel.  Docs. 97, 100.  The Court granted summary judgment in favor of Deputy Redinger's colleague, Deputy Stephanie Archer.  Doc. 106.  Deputy Archer had little involvement in the physical arrest.  *Id*. at 4–9.  The Court denied the defense summary judgment motion for Deputy Redinger.  *Id*. at 9.  This portion of the summary judgment order ruling

against Deputy Redinger was not detailed.  The undersigned mistakenly thought that the prior Eleventh Circuit record and opinion, and Plaintiff's counsel's command of the facts in appellee's brief and cross-appeal, would buttress this ruling.

In a stipulation signed by all counsel, Plaintiff dismissed with prejudice the *Monell* claim against the Sheriff.  Doc. 107.  The stipulation stated the dismissal "would be in the best interest to [an] efficient and proper resolution of this case." Deputy Redinger, as the sole remaining defendant, then appealed based upon a failure to grant his summary judgment motion on qualified immunity.  Doc. 111 (notice of appeal filed 2/28/20).

On May 4, 2020, Mr. Baysa's lawyers filed in the pending appeal a motion to withdraw as counsel.  *Baysa v. Redinger*, No. 20-10824 (11th Cir.).  The motion stated that Mr. Baysa's counsel "has had to deal with a volatile client who refuses to accept and follow his counsel and advice, but instead sees fit to verbally attack the undersigned [lawyer], call him names, and threaten to file a frivolous Florida Bar Complaint against him."  Mot. to withdraw at 3.  The motion noted that Mr. Baysa had refused on multiple times to consider a significant settlement range and that he "has chosen to conduct himself in a demeaning and nefarious manner" causing irreconcilable differences between client and lawyer.  *Id.*  Mr. Baysa's lawyer stated that he expected administrative litigation with Mr. Baysa and

4

anticipated commencing an adversarial legal process with him.  *Id*. at 4.  The Eleventh Circuit granted the motion to withdraw on June 1, 2020.

Mr. Baysa sought several extensions of time in the Eleventh Circuit and received a total of four extensions to file his appellee's brief.  The final due date was January 7, 2021, but Mr. Baysa never filed an answer brief.  Mr. Baysa also could have sought a cross-appeal on the Deputy Archer ruling under Federal Rules of Appellate Procedure 4(a)(3) and 28.1.  This failure to brief the direct appeal, and to address on cross-appeal this Court's decision against Mr. Baysa as to Deputy Archer, left this Court's short denial of Deputy Redinger's qualified immunity unsupported on appeal.

On October 16, 2020, Mr. Baysa filed in the Eleventh Circuit a motion to stay the appeal, requesting that the appellate court order his former lawyers to turn over their case files and give him an attorneys' fee refund.  He expressed displeasure with his lawyers' strategies and took umbrage at the lawyers' request for a trial fee.  Mot. to stay at 2–3.  Mr. Baysa noted that his Florida Bar grievance against them was denied, despite his contacting the Bar President "on numerous occasions."  *Id.* at 5.  The motion was pejorative and suggested the State Attorney on his criminal case had possible unethical connections to then-President Trump and Attorney General Barr.  *Id.* at 7–8.  Notably absent from this pleading was any allegation that his former lawyers conspired with the present defense attorney to

5

sabotage his case and defraud the courts.  The Eleventh Circuit denied this motion on November 6, 2020, but *sua sponte* afforded Mr. Baysa his fourth and last extension of time to file an appellee's brief.  As noted above, this time expired without Mr. Baysa filing any brief.

On November 11, 2020, Mr. Baysa filed with the Eleventh Circuit a 14-page motion to reconsider his motion to stay.  Again, no mention was made of any putative lawyer conspiracy to commit fraud and sabotage his case.  The Court of Appeals denied this motion on December 11, 2020.

With no appellee brief being filed, the Eleventh Circuit ruled on Deputy Redinger's appeal, vacating and remanding the order that denied Redinger's qualified immunity claim.  Doc. 118; *Baysa v. Redinger*, 851 F. App'x 175 (11th Cir. 2021).  The Eleventh Circuit held that the summary judgment order did not sufficiently address the legal and factual standards required for appellate review, and remanded "with instructions for the district court to enter a new order that details the legal analysis used to reach its conclusion regarding the deputy's qualified immunity issue on summary judgment."  851 F. App'x at 177 (internal quotation marks omitted).

*UPON REMAND AND THIRD APPEAL*:

Upon remand this Court held a status conference on August 24, 2021.  Doc. 160.  Mr. Baysa affirmed that he would be proceeding *pro se*.  *Id.* at 3.  The Court

6

cautioned him against representing himself but reminded him that the rules of law would apply to his *pro se* representation just like they would to an attorney. *Id.* at 3–4. The Court also cautioned Mr. Baysa that he might have to file a brief on the merits in the likely event that Deputy Redinger appealed to the Eleventh Circuit. *Id.* at 8.

At this status conference Mr. Baysa complained that the arrest report of the arresting officer—Deputy Redinger—was not in the record. *Id.* at 4, 9. In this regard he stated: "I don't know whether my former attorneys and [defense counsel] are playing games or whatnot." *Id.* at 9. Deputy Redinger had been deposed in the matter, and although the lengthy and detailed summary judgment record had long been closed, defense counsel offered to place the arrest report into the record and did so later that afternoon. *Id.* at 10–11; Doc. 130. Mr. Baysa then stated that he had three or four additional documents to introduce into the record. Doc. 160 at 11. The Court granted Mr. Baysa leave to "file anything like that you want….I'm going to give you two weeks to get on file, two weeks whatever you deem pertinent." *Id.* at 12. The Court gave Mr. Baysa full leave to file any documents or rebuttal and cautioned Mr. Baysa to adhere to the deadline as there was a remand from the Court of Appeals that had to be attended to "because I have some people in Atlanta who are looking over my shoulder." *Id.* at 14–15.

Unfortunately, Mr. Baysa filed nothing on the merits in the time allotted.  Nor did Mr. Baysa take any action in response to Deputy's Redinger's arrest report which defense counsel had filed that day, Doc. 130, at Mr. Baysa's instance.

Nine days after this hearing, Mr. Baysa filed in this Court a motion to compel his former attorneys to return his case file and refund his fee.  Doc. 132.  Mr. Baysa complained of his attorneys' "half-assed appeal" on his behalf and noted that his Florida Bar grievance against them proved fruitless.  *Id*. at 3.  He stated they were "exploitative and gluttonous."  *Id.* at 4.  He also noted that the panel of the Eleventh Circuit (whom he described as "two appointees by the MAGA MAN") had previously denied this same relief he sought against his former lawyers.  *Id*.  In this motion Mr. Baysa also stated that he would soon file a motion against present defense counsel, establishing that present defense counsel was engaged in a scheme or contrivance with his former lawyers in "serious misconduct backed with clear and convincing evidence."  *Id*.  This motion was never filed.

The undersigned denied Mr. Baysa's motion to compel his former lawyers to turn over their case files and refund his attorneys' fee.  Doc. 135.  The Court noted that Mr. Baysa had previously sought relief from the Florida Bar and from the Eleventh Circuit on this same issue.  The Court stated that this task is one of the roles of the Florida Bar and that Mr. Baysa might consider filing a replevin action.

*Id*.  The Court stated that it does not adjudicate disputes between client and former counsel except in rare occasions not presented in this case.  *Id*.  The Court enlarged the schedule to permit Mr. Baysa, once again, additional time to file any materials, extending the deadline to 14 days from the Court's order—until September 20, 2021.  Doc. 136.  The Court also stated that it "reiterates its respectful suggestion that Mr. Baysa attempt to get counsel on his case.  Bay Area Volunteer Legal Services might provide assistance for free."  *Id*.  The Court had earlier referred Mr. Baysa to helpful materials for *pro se* litigants on the court web site.  Doc. 121 at 1– 2 n.1.

The Court twice granted Mr. Baysa leave and extensions to supplement the record.  Despite his stated intention to file a motion showing a conspiracy between his former counsel and the present defense lawyer, Mr. Baysa filed nothing in the time twice extended.

Without the benefit of Mr. Baysa's promised supplemental filing, on October 15, 2021, this Court filed its order on remand as instructed by the Eleventh Circuit.  Doc. 137.  In that order, the Court denied Deputy Redinger's motion for summary judgment on the remaining count—excessive force arrest—based upon qualified immunity.  *Id*.  That same day, the Court set the excessive force count for trial, but Deputy Redinger once again appealed.  Docs. 138, 139.

*THE THIRD APPEAL:*

The sole remaining count before the undersigned and the subject of this third appeal was the excessive force arrest count.  Deputy Redinger filed his appellate brief on January 21, 2022, arguing in favor of qualified immunity.  *Baysa v. Redinger*, No. 21-13943 (11th Cir.).  Mr. Baysa never filed an appellee's brief. On March 30, 2022, Mr. Baysa filed in the Eleventh Circuit a motion for extension of time to file his appellee's brief.  The motion for extension of time contained pejorative language and attached the arrest report of Deputy Redinger.  Mr. Baysa stated that "it is highly likely that the two conflicted, exploitative, and gluttonous [Mr. Baysa's] attorneys struck a backroom deal with their equally corrupt counterpart [the defense lawyer]."  Mot. to extend time at 3 n.5 (internal quotation marks omitted).  The Eleventh Circuit Clerk took no action on the motion because it was untimely.

In May and June 2022, Mr. Baysa filed three more pleadings before the Eleventh Circuit.  On June 10, he filed a "Motion to Vacate Judge Jung's Ruling as to My False Arrest Claims Against Archer and Redinger III."  In this pleading he suggested that his former lawyers had cited Deputy Redinger's arrest report to the undersigned but had not filed it.  Mot. to vacate at 4.  Deputy Redinger responded to this motion to vacate on the merits, on June 21, 2022.

10

These appellate Baysa pleadings contained unfortunate demeaning language, referring to Mr. Baysa's prior lawyers as "Darkness" and "L'il Judas" and referring to Deputy Redinger's counsel as "Slim Shady" and Deputy Stephanie Archer as "Redinger's sidepiece." Mot. to vacate filed 6/10/22 at 10, 16. He suggested the State Attorney "BIG BERNIE" was involved in corruption. *Id.* at 11. He cursed and was disrespectful to appellate and district court judges. *Id.* at 17. He used the sobriquet "MAGA KING'S appointee" when referring to the undersigned. *Id.* at 8.

In a pleading filed in the Eleventh Circuit on June 16, 2022, which appears to be a duplicate, Mr. Baysa again sought vacatur of the prior 2018 order of the district court and appellate affirmance finding no liability for false arrest. He also repeated his request from the second appeal that the appellate court order him a refund of his attorneys' fees, this time because the lawyers were conspirators. He argued that these lawyers "deceived/hoodwinked/bamboozled" the district court and the affirming panel of the Eleventh Circuit into thinking there was probable cause to arrest him for trespass at the Derby Lane poker room. Suppl. to Mot. to vacate filed 6/16/22 at 10.

On July 27, 2022, the Eleventh Circuit affirmed the Court's finding that Deputy Redinger had not established a qualified immunity defense on the excessive force arrest claim. Doc. 149; *Baysa v. Sheriff of Pinellas Cnty.,* 2022 WL 2974110 (11th Cir. July 27, 2022) (unpublished). The Court of Appeals

11

expressly held "Baysa's Motion to vacate Judge Jung's Rulings as to My False Arrest Claims against Archer and Redinger III is DENIED." *Id.* at *2 n.1.

*PRIOR TO THE 2022 REMAND:*

Prior to the Eleventh Circuit's July 2022 remand, and five months into the third appeal, on May 3, 2022, Mr. Baysa filed in this Court a motion to vacate its prior order of October 24, 2018. Doc. 144. The 2018 order, Doc. 70, was the subject of the first appeal. Doc. 81. Mr. Baysa sought to vacate the 2018 ruling finding probable cause to arrest, which the Eleventh Circuit had expressly affirmed by opinion in that first appeal, *see* 786 F. App'x at 944–45—the same relief that the Eleventh Circuit denied in July 2022 in the most recent appeal. *See Baysa*, 2022 WL 2974110, at *2 n.1.

This motion to vacate filed in this Court was 42 pages long plus 19 pages of attachments. Doc. 144. The motion sought to bring back into the case Deputy Stephanie Archer, who had been out of the case for two years. The motion urged the undersigned to vacate the 2018 order finding probable cause to arrest, because the order was "CLEARLY OBTAINED THROUGH FRAUD by my former attorneys….along with the defendants' attorney…." *Id*. at 2. Mr. Baysa's motion was again hindered by his use of the pejorative, referring to his two former lawyers as "Darkness and Lil Judas," *id*. at 3 n.2, 10, defense counsel as "Slim Shady," *id*. at 10, 15, and referring to the district judge as "MAGA MAN'S appointee." *Id*. at

5.  The motion noted that the defendant Sheriff "rubbed shoulders and did photo ops" with "the ORANGE GUY" during the time of the George Floyd protests.  *Id.* The motion acknowledged that the Eleventh Circuit, substantively and on the merits, had affirmed the 2018 ruling that he now wanted vacated.  *Id*. at 7–8.

In essence Mr. Baysa argued that some documents were not employed by his attorneys or defense counsel.  They were "concealed."  *Id*. at 8.  These items were documents Mr. Baysa would have been aware of in 2018 or earlier.  *Id.*  The motion suggested as a reason for this failure: "It is highly likely that the two [Baysa] attorneys who revere Mammon struck a backroom deal with their equally corrupt counterpart in [defense lawyer] Slim Shady."  *Id.* at 10.  This concealment scheme "hoodwinked" the courts and prevented a full explication of Plaintiff's case four years prior.  *Id.* at 10–11.

The motion to vacate cited a number of Florida Bar regulations violated by these lawyers.  It cited as "the smoking gun" the Deputy Redinger's report which was written after "he, his backup and the two Derby Lane guards mauled me like a pack of super hungry hyenas."  *Id*. at 11.  The motion suggests Deputy Redinger's report was untrue and was "creative writing."  *Id.* at 13.  Mr. Baysa stated the report falsely portrayed him "as a Brown Savage."  *Id*. at 14.  He reiterated that his lawyers were "conflicted, exploitative, and gluttonous."  *Id.*  Although labeled a "smoking gun" and false, the police report (in the record at docket 130) does not

13

cast doubt on the prior ruling about probable cause to arrest, nor does Mr. Baysa's motion suggest why defense counsel's failure to file the report earlier was conspiratorial.

Mr. Baysa expressed in florid terms his anger with the situation and his frustration with it.  He did not state grounds for a fraudulent scheme being perpetrated on the Court.  And apparently the Florida Bar agreed in not sustaining his grievance along the same lines.

When this motion to vacate was filed, the case was still on appeal and was not remanded until two months later.  On May 9, 2022, this Court denied the motion explaining that the matter was presently on appeal and outside the lower court's jurisdiction.  Doc. 147.  The Eleventh Circuit then denied the very similar motion in its July 2022 opinion as noted above.

*AFTER 2022 REMAND*:

On the July 2022 remand, the undersigned set the much-delayed trial for September 2022.  The Court set a pretrial conference for August 25, 2022 and issued a supplement to the case management and scheduling order.  Doc. 151. This new case management order adopted and supplemented a prior order, Doc. 94.  This operative order required the parties by mid-August to meet, confer, and exchange exhibit and witness lists, and to file a joint pretrial statement.  Doc. 151 at 1.  It required the parties to submit proposed voir dire questions and proposed

14

jury instructions and verdict forms, referring the parties to the local rule that set forth these requirements.  *Id.*  The order cautioned the parties that "[f]ailure to comply with this order will result in case sanctions." *Id.* at 4.

Mr. Baysa did not refile his previously filed and twice denied motion for vacatur of the prior rulings.  On August 5, 2022, he filed a motion for an evidentiary hearing on his previously denied motion and requested that the previously denied motion be heard on the merits.  Doc. 152.  He noted that Deputy Redinger's counsel opposed the motion and this counsel had insisted that the parties "should start working on joint pre-trial statements." *Id.* at 1 n.1.  The motion for hearing alleged a fraudulent scheme between all counsel and cited as proof "the smoking gun (*i.e*, Redinger's arrest report)." *Id.* at 2.  The Court denied this without comment on August 15, 2022.  Doc. 153.

Shortly thereafter, Deputy Redinger's counsel filed a motion to dismiss because Mr. Baysa was refusing to prepare for trial as ordered by the pretrial order.  Doc. 154 and attachments.  Regrettably the motion showed Mr. Baysa was refusing to meet and confer with counsel and prepare the case for trial as ordered.

Mr. Baysa refused multiple requests of defense counsel to comply.  Mr. Baysa stated, "The meeting you're referring to isn't going to take place because Jung needs to correct his erroneous ruling as to my false arrest claims against your two clients…. You can't fucking cheat and claim innocence thereafter Slim Shady.

15

You, Darkness and Lil Judas are on the spotlight [smile face emoji]." Doc. 154-1 at 1. "Simply put, I will not comply with the pretrial mandates…." Doc. 154-2 at 1. Mr. Baysa would not meet, confer, participate in a joint pretrial statement, or identify witnesses or exhibits. Mr. Baysa's responses to these attempts to cooperate were pejorative. He repeatedly referred to the lawyers by insulting, obliquely racial names, made various reputational and similar threats, etc., and ended one email with "Understand Spanish Inquisition, Dude?" Docs. 154-1–154-5. Mr. Baysa stated to counsel that if the undersigned did not grant his request for an evidentiary hearing, " a recusal motion will follow." Doc. 154-4 at 1. No recusal motion was filed.

Defense counsel did not treat Mr. Baysa with disrespect in these emails. He sent several very plain requests, and made a number of phone calls, in an attempt to get compliance with the pretrial order. Doc. 154-5 at 2–3. Although Mr. Baysa sent 25 various emails to defense counsel, he clearly declined to comply with the plain terms of the pretrial order, nor would he provide a substantive response to draft joint pretrial statements that counsel provided him. *Id.* Due to Mr. Baysa's refusal to confer about pretrial matters, Deputy Redinger's counsel had to file an individual pretrial statement, not a joint pretrial statement as the Court ordered. Doc. 155. Mr. Baysa defied the pretrial order entirely.

In response to Mr. Baysa's defalcation, the Court issued a show cause order requiring Mr. Baysa to show cause in writing no later than August 30, 2022, why the matter should not be dismissed for failure to comply with the pretrial order. Doc. 156.  Due to matters that developed at the August pretrial conference, the case never reached that point.

The Court held a pretrial conference as scheduled, on August 25, 2022. Doc. 163.  Mr. Baysa stated that the Court should consider and grant his motion to vacate filed in May 2022.  *Id*. at 4.  The Court noted that the motion had been denied (order at docket 147) and that a motion "doesn't relieve you of your duties to comply with the pretrial order."  *Id*.  Mr. Baysa interrupted the Court at that point, and frequently talked over the Court thereafter.  Mr. Baysa asked for a ruling on the merits and that considerations of res judicata were inapt.  *Id.* at 5.  Mr. Baysa argued that he desired a hearing on the motion and that his former counsel and the present defense counsel excluded from consideration the Redinger arrest report.  *Id*.  He also stressed that the State Attorney on the underlying arrest "committed prosecutorial misconduct by, you know, getting so crazy asserting after warning and violating rule 3.191, paragraph O."  *Id*.  The Court then noted that the Eleventh Circuit affirmed the issue on probable cause to arrest.  *Id*.  Mr. Baysa stated '"I don't see that."  *Id.*  Mr. Baysa at this time may have been

referring to the 2022 litigation in the Court of Appeals rather than the affirmance on the merits of the arrest probable cause issue four years earlier in the case.

Mr. Baysa remonstrated that "there is no finding of facts or anything like that whether my allegation as to as to my former attorneys and opposing counsel, you know, is legitimate." *Id.* at 6. The following exchange then occurred at the hearing:

> THE COURT: All right, Well, I denied it. So I ruled it out based upon where this case is. So we're not going – you lose on that motion, Mr. Baysa.
> MR. BAYSA: No, Sir.
> THE COURT: Well, yes, sir. Yes, sir. I denied it. It's denied. I'm not going to hear it. Your motion is denied. We are set for trial on what's left of this case which is your claim against Redinger for excessive force, as the Eleventh Circuit sent down here.
> Now, do you intend to participate in this matter, and what are we going to do about your failure to participate in the pretrial conference?
> . . . .
> Did you participate in that? Did you follow my Order there?
> MR. BAYSA: No, I did not.

*Id.* at 6–7.

The Court does not intend in this memorandum order to repeat the entire unfortunate colloquy with Mr. Baysa that occurred at the August pretrial conference. A copy of this transcript (Doc. 163) is attached here as an appendix for ease of review. Suffice it to say, Mr. Baysa was unwilling and unprepared to proceed for trial after remand, unless the undersigned would revisit and change a ruling that Mr. Baysa admitted was made "many years ago." *See id.* at 7. He

18

argued that this ruling must be revisited due to an unspecified, speculative but

fraudulent conspiracy of his prior counsel and present defense counsel to

deliberately sabotage his prior counts.

Mr. Baysa admitted that he did not obey the Court's pretrial order "because

of my stance." *Id.* at 7, 9.  Mr. Baysa stated that he did not participate because the

Court should revisit the prior ruling.  Mr. Baysa talked over, or interrupted, the

Court repeatedly and would not discuss the preparation for trial, or his lack thereof.

*Id.* at 8–9.  Finally, the matter devolved to:

> THE COURT: No, I'm not going to answer any interrogatories or make
> any ruling that you desire.  My question to you is simple, do you intend
> to meet-and-confer, exchange witness and exhibit lists for the trial – on
> the trial that is upcoming and issues upcoming presently in the case?
> The answer is yes or no.
> MR. BAYSA:  No, on the grounds that you must entertain my fraud on
> the Court motion first.

*Id.* at 10–11.

The pretrial conference deteriorated further.  Mr. Baysa continued to

interrupt and talk over the Court despite being instructed not to do so.  *Id.* at 8, 12

("Mr. Baysa continues to talk over the Court"); *see also id.* at 4, 9, 10, 14 ("Mr.

Baysa continues to interrupt Judge Jung"), 15.  He made clear that he was not

prepared to try the case that was set for trial by the remand.  He stated that the

undersigned was duty bound to report the conspiring attorneys to the appropriate

authority for fraud.  *Id.* at 12.  The Court instructed Mr. Baysa to cease discussing

19

his motion to resurrect counts, and to focus on the upcoming trial setting, upon pain of dismissal if he continued. *Id.* at 8–12.  The Court repeated this instruction several times. *Id.* at 14.  Unfortunately, Mr. Baysa declined to follow this instruction and demanded the trial be on his other claims—that were resolved years prior but were the subject of the putative fraud conspiracy between his former counsel and defense counsel. *Id.* at 15 (MR. BAYSA: "You can't just, oh, narrow the issues and, like, Mr. Baysa is a piece of shit and he wants to sever the excessive force case.  I mean for God sakes they excluded evidence, critical evidence, you know.  For you just to ignore that, that they did something like that, which is the foundation of, you know, candid tribunal.  They had a duty to disclose.").

Mr. Baysa argued that his former attorneys conspired with Deputy Redinger's lawyer to commit fraud upon the Court by excluding Redinger's arrest report from the record. *Id.* at 14.  But the record was supplemented with this report as early as one year prior, and Mr. Baysa was given leave then to file pleadings regarding the report, which he did not do.  And the report supported no such conspiracy allegation.  After this and after several more attempts, the Court dismissed the case. *Id.* at 15.

## LEGAL ANALYSIS

*Pro se* litigants who ignore discovery orders are subject to sanctions like any other litigant. *Moon v. Newsome,* 863 F.2d 835, 837 (11th Cir. 1989).  The severe

sanction of dismissal is warranted under Fed. R. Civ. P. 41(b) when a party's failure to comply evinces a refusal to acknowledge the court's authority and no willingness to comply with court orders. *Id.* In other words, the refusal must be willful and intentional. *Goforth v. Owens,* 766 F.2d 1533, 1535 (11th Cir. 1985); *see generally Haji v. NCR Corp.,* 834 F. App'x 562, 563 (11th Cir. 2020) (*citing Nat'l Hockey League v. Metro. Hockey Club, Inc.,* 427 U.S. 639, 641 (1976)). These tests are met here.

A court may dismiss an action for failure to prosecute or to obey a court order or rule. *Link v. Wabash R.R. Co.,* 370 U.S. 626, 630 (1962). The court possesses inherent authority to manage its docket. *Betty K Agencies, Ltd. v. M/V Monada,* 432 F.3d 1333, 1337 (11th Cir. 2005).

In this instance there was contumacious refusal to comply, and no lesser sanctions or alternatives to dismissal. The matter had been remanded to this Court for trial on the remaining count. The counts that Mr. Baysa wanted reopened under his conspiracy theory were long-ago resolved, including by an appeal to the Eleventh Circuit who ruled and expressly affirmed on Mr. Baysa's main contention—the false arrest count—and had recently denied a motion that Mr. Baysa thereafter demanded be granted before he would proceed. The trial setting on the remand was something Plaintiff Mr. Baysa showed by both words and conduct that he did not intend to participate in.

21

The Court showed patience with Mr. Baysa.  Mr. Baysa declined to participate in the pretrial preparation for the upcoming jury trial and declined to follow the Court's written instructions in that regard.  He stated so at the hearing and defied the Court's clear verbal orders at the hearing as well.  It was his case to prosecute, and he declined to do so.

Despite being forewarned first by the defense motion to dismiss for intentional failure to comply with the pretrial order, and then repeatedly by the Court, Mr. Baysa willfully and intentionally participated in his refusal to proceed on the matter at hand.  The dismissal came after 15 pages of transcript with the Court constantly seeking to direct him to the upcoming trial of his case.  Mr. Baysa knowingly defied the Court's orders and failed to prosecute his case.  The case is dismissed.  The Clerk will enter final judgment for Defendants and close this file.

**DONE AND ORDERED** at Tampa, Florida, on October 18, 2022.

WILLIAM F. JUNG
UNITED STATES DISTRICT JUDGE

**COPIES FURNISHED TO:**
Plaintiff, *pro se*
Counsel of record

22